# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin



| | |
|---|---|
| United States of America<br>v.<br>John A. Marin (DOB XX/XX/1981)<br><br>*Defendant(s)* | ) ) ) ) ) ) ) )   Case No. **24-M-542 (SCD)** |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of   August 2022 to July 2023   in the county of   Milwaukee   in the
Eastern District of   Wisconsin  , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1) & 846, and 18 U.S.C. § 1956(h) | Distribution of cocaine, conspiracy to distribute cocaine & conspiracy to commit money laundering. |

This criminal complaint is based on these facts:

    See Attached Affidavit

☑ Continued on the attached sheet.

*Curt R Hansen*
*Complainant's signature*

Curt Hansen, HSI SA
*Printed name and title*

Sworn via telephone; transmitted via email pursuant to Fed. R. Crim. 4.1

Date:   11-20-24

*Stephen C. Dries*
*Judge's signature*

City and state:   Milwaukee, Wisconsin   Honorable Stephen C. Dries, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF
# CRIMINAL COMPLAINT

I, HSI Special Agent Curt Hansen, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent of the United States Department of Homeland Security, Homeland Security Investigations (HSI), assigned to the Resident Agent in Charge (RAC) Milwaukee, Wisconsin. I have been employed with HSI as a Special Agent for approximately a year and a half. Prior to employment with HSI, I worked as a Deputy United States Marshal, Federal Air Marshal, and United States Border Patrol Agent. I have been a sworn federal law enforcement officer specifically investigating crimes involving narcotics, firearms, smuggling, terrorism, and immigration since September 2011. Throughout my law enforcement career, I have received training in general law enforcement and in specialized areas including narcotics and human smuggling. I am an investigator or law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7), in that I am empowered by law to conduct investigations of and to make arrests for federal felony offenses. Since becoming employed as a federal agent, I have completed the Criminal Investigator Training Program at the Federal Law Enforcement Training Center in Brunswick, Georgia. As part of my duties and responsibilities as an HSI Special Agent, I am authorized to investigate crimes that involve narcotics violations pursuant to Title 21, United States Code.

2. As part of my duties as an HSI Special Agent, I have experience conducting criminal investigations involving narcotics, firearms, gangs, and human smuggling and have participated in the execution of search warrants in such investigations. I am familiar with various methods of smuggling and trafficking narcotics and other controlled substances and the proceeds

from sale of such substances. I am also familiar with methods used to evade detection of both the controlled substances and the proceeds from their sale that are used by drug traffickers.

3. The information set forth in this affidavit comes from my personal involvement in this investigation, as well as from information provided to me by other law enforcement officers. Throughout this affidavit, reference will be made to case agents or investigators. Case agents or investigators are those federal, state, and local law enforcement officers who have directly participated in this investigation, and with whom your Affiant has had regular contact regarding this investigation.

4. This affidavit is submitted for the limited purpose of establishing probable cause for the issuance of a criminal complaint against John MARIN for violations of the laws of the United States, that is, conspiring with others, known and unknown, to possess with the intent to distribute controlled substances in violation of Title 21, United States Code, Sections 846 and 841(a)(1) (conspiracy to distribute cocaine and distribution of cocaine) and conspiring with others, known and unknown, to launder money in violation of Title 18, United States Code, Section 1956(h).

## PROBABLE CAUSE

5. The United States, including HSI, the Internal Revenue Service-Criminal Investigation, the Drug Enforcement Administration, the Bureau of Alcohol, Tobacco, Firearms, and Explosives, is investigating the Marin drug trafficking organization's ("DTO") distribution of illegal drugs, including large quantities of cocaine, across the United States including within the Eastern District of Wisconsin, and the DTO's money laundering operation. As discussed below, Marin is believed to be the leader of this drug trafficking conspiracy and money laundering operation. Marin has been utilizing commercial shipping entities including the Federal Express ("FedEx") to distribute drugs across the United States and to receive drug

proceeds. Marin conspired with Antonio Long to supply Milwaukee, Wisconsin distributors, the subject referred to herein as Confidential Source #1 ("CS#1"), and Bobby Perry, with as much as 30 kilograms of cocaine, per month from at least 2017 through 2022. Participants in the Marin DTO and money laundering operation include Marin, Antonio Long, Brian Wilbert, Bobby Perry, and others known and unknown to distribute large quantities of illegal drugs. Marin utilized his California-based jewelry business, "JM Time Corp / R&J Watch Co" to facilitate and disguise his cocaine trafficking activities and the proceeds derived therefrom in various ways, including the following:

a. Long, a resident of Gilbert, Arizona, brokered shipments of large quantities of cocaine from Marin to CS#1 and Perry (in Milwaukee) by inquiring from these distributors how much cocaine he should order, then placing the orders with Marin. These communications occurred via electronic communication devices;

b. Marin delivered the cocaine from JM Time Corp / R&J Watch Co's physical location at XXX S. Olive Street, Los Angeles, California 90014 to Brian Wilbert, Antonio Long's cousin who drove the cocaine from California to Milwaukee, Wisconsin. Cocaine was seized by HSI during an interdiction operation targeting Wilbert. Wilbert later admitted to picking up the cocaine from XXX S. Olive Street and driving it to Wisconsin. Global positioning data obtained by a GPS device placed on Wilbert's vehicle corroborates that Wilbert picked up the cocaine from XXX S. Olive Street;

c. Long admitted to law enforcement that he had a substantial drug debt that he owed to Marin and would make periodic payments based upon his available funds. It appears that Long continued to pay Marin related to their prior drug transactions even after the execution of a federal search warrant at Long's residence in 2023. Based upon the records, Long made

what appears to be a payment to Marin towards the drug debt as recently as July 2024.

d. The Milwaukee, Wisconsin distributors of Marin's cocaine shipped the currency derived from their sales of the cocaine to Marin via his business, "R&J"; i.e., JM Time Corp / R&J Watch Co. The shipments were made through commercial parcel shipping company Federal Express. Marin disguised the large amounts of cash drug proceeds being shipped to him as proceeds from his business's (JM Time Corp / R&J Watch Co) sale of jewelry. Marin provided fictitious invoices to his drug distributors for inclusion with the cash being shipped from the drug distributors to Marin. The invoices were prepared through an internet (computer/cell phones) application hosted by Wave Financial USA, Incorporated;

e. Marin provided his cocaine distributors with FedEx labels for use in shipping their drug proceeds to Marin. Marin generated the labels at a neighboring business, IFS Inforsure, Incorporated. Those FedEx labels listed both the sender and the receiver of the currency-ladened packages as Marin through his business, abbreviated as "R&J". Thus, the labels disguised the packages as being related to the jewelry business and the labels concealed the true identities of the persons sending the packages, as well as the locations from which the packages actually originated;

f. Marin and other individuals deposited some of the drug proceeds into his JM Time Corp bank accounts, thereby disguising the drug proceeds as jewelry proceeds. Marin also established other alleged business entities (and bank accounts in their names) through which the drug proceeds, after being commingled in the JM Time Corp bank accounts, were transferred to further disguise the source of the funds. Said accounts were used to

conduct personal transactions, including some with Marin's co-conspirators;

g. Marin, in the name of JM Time Corp / R&J Watch Co, often received currency payments greater than $10,000, including the parcels shipped from CS#1 from Milwaukee, Wisconsin, which often contained more than $200,000 in drug proceeds. Marin was required to file a currency transaction report with the United States Department of Treasury's Financial Crimes Enforcement Network (FinCEN), which Marin failed to do;

h. Marin eventually conspired with other individuals, including Michael Aleman and Graciela Gonzalez-Cruz, to establish fictitious business entities for which they too could produce fictitious invoices and FedEx labels, and through which Marin's cocaine distributors would ship their drug proceeds to Marin. This too required the filing of Form 8300 (currency transaction reports), which were not filed; and

i. Gonzalez-Cruz would use her apartment at XXXXX Crenshaw Boulevard Unit # XXX, Hawthorne, California 90250 to receive large quantities of FedEx parcels containing US currency using false invoices under the name of Virgo Stones and Jewelry Co. CS #1 sent currency ladened FedEx parcels to Gonzalez-Cruz from Milwaukee and provided the false invoices to case agents. Historical FedEx subpoenas compared to recent ones show the same pattern of parcel traffic to Gonzalez-Cruz indicating she is still receiving parcels of currency, as Virgo Stones Jewelry Co. was created for the sole purpose of making currency parcels look like legitimate business parcels. According to Antonio Long, after Gonzalez-Cruz receives the parcels, she gives them to Marin as he handles all of the narcotics proceeds.

6. In August 2022, HSI Milwaukee, Milwaukee Police Department Violent Crimes Unit (MPDVCU), along with members of DEA Group 68 initiated an investigation into individuals distributing cocaine throughout Milwaukee, Wisconsin. HSI identified the individuals involved in this cocaine drug trafficking as, among others, Antonio LONG, Brian WILBERT, John MARIN, and Bobby PERRY.

7. On August 9, 2022, Milwaukee Police Department Violent Crimes Unit (MPDVCU) District 3 executed a Wisconsin State search warrant issued by the Circuit Court of the 1st Judicial District of Wisconsin at a residence in Milwaukee, Wisconsin. The occupants of the residence were not present during the execution of the search warrant. During the search of the residence, Officers from MPDVCU located and seized crack cocaine, marijuana, psilocybin, two handguns (Glock 19 and Sig P365), various ammunition with high-capacity magazines, high dollar jewelry items, and $10,076.00 in US currency. A black Samsung smartphone was also seized. MPDVCU also seized various scales with narcotic residue on them as well as other narcotic related paraphernalia. Officers of the MPDVCU seized bank documents and invoices that displayed large currency transactions for jewelry, automobiles, and transfers of currency. MPDVCU located documents that indicated the target for the search warrant had a storage unit in Waukesha County, Wisconsin.

8. MPDVCU subsequently applied for and obtained an additional Wisconsin State search warrant for said storage unit. The search warrant was executed at approximately 8:00 PM on August 9, 2022. During the search of the storage unit, Officers from the MPDVCU located 21 clear corner cut plastic baggies containing cocaine and five pressed bricks of a cocaine. A combined total of 5.8 kilograms of cocaine was present. MPDVCU Officers located 20 large vacuum sealable plastic bags containing marijuana with a total weight of 18.7 pounds. A .9mm

Palmetto State Armory AR-15 (AR Pistol) and a Maverick model 88 12-gauge shotgun with sawed off barrel were located within the storage unit. MPDVCU also located and seized $39,610 in US currency from the unit. All items were seized and inventoried by MPDVCU.

9. On August 18, 2022, the MPDVCU requested assistance from HSI Milwaukee and DEA Group 68 to assist with the investigation. Through information obtained from a confidential source (CS #1), historical law enforcement records, electronic surveillance, toll record analysis, social media exploitation, and open-source databases, HSI Special Agents and MPDVCU determined the source of supply for the cocaine that was seized is John Marin, as brokered through Antonio Long. In sum, Long orders large quantities of cocaine from Marin. Long sends his driver, Brian Wilbert, to physically acquire the cocaine from Marin's jewelry store business and to transport the cocaine from Los Angeles, California to Milwaukee, Wisconsin. Marin informs Long of the amount owed to him for the cocaine and, via emails, provides Long with a FedEx label for use in shipping currency payments to Marin. Marin also provides Long with a fictitious invoice from his jewelry business, JM Time Corp / R&J Watch Co. The purpose of the invoice, which is intended to accompany the currency being shipped to Marin via FedEx, is to disguise the drug proceeds as jewelry-related proceeds. Investigators have determined that the Long / Marin drug trafficking organization (DTO) distributed as many as 30 kilograms of cocaine monthly to the Milwaukee, Wisconsin area, which at current Milwaukee area prices of between $21,000 to $24,000 per kilogram would generate approximately $630,000 to $720,000 of cocaine proceeds per month.

10. Case agents identified a confidential source, CS #1, who participated in distributing cocaine provided by the DTO in the Eastern District of Wisconsin. For several reasons, case agents believe that CS #1 is reliable and credible. First, CS #1 has been providing

information since August of 2022 and is still an active informant. Second, the information provided by CS #1 is consistent with evidence obtained elsewhere in this investigation where CS #1 was not utilized, and substantial portions of CS #1's information have been corroborated through independent investigation. CS #1 originally began cooperating with law enforcement in hopes of receiving consideration for state drug trafficking charges. As a result of CS #1's cooperation, CS #1 was not convicted of these charges. They have been dismissed and will not be reissued. CS #1 is no longer working for potential criminal case credit. Currently, CS #1 is continuing to cooperate with law enforcement as a paid informant. CS #1 has prior felony convictions for robbery and a weapons violation. Finally, CS #1 has had an adequate opportunity to directly observe the events discussed and/or has heard conversations directly from the individuals discussed herein. For these reasons, case agents believe CS #1 to be reliable.

11. In 2022, CS #1 was interviewed by case agents regarding CS #1's participation in distributing cocaine provided by the DTO in the Eastern District of Wisconsin. CS #1 told case agents that the cocaine is transported via a white Ford Transit van concealed in furniture or within a trap built into the vehicle's floor. CS #1 also stated that the driver of the white van is Brian Wilbert. Law enforcement database checks revealed a white Ford Transit van bearing Arizona license plate number Z6A6CAA was registered to Brian Wilbert. CS #1 stated that Wilbert was the primary source of transportation for the Long DTO. Wilbert is the cousin of Long and, like Long, has a residence in Gilbert, Arizona. CS #1 stated that upon receipt of the cocaine, the Long DTO sells the cocaine by the kilogram, frequently making multiple kilogram sales per customer. CS #1 stated that the Long DTO has been actively operating in the Milwaukee area for approximately five years (this statement was made in 2022, so the five-year timeframe CS #1 referenced is approximately 2017 to 2022). Your affiant notes that the

$630,000 - $720,000 of cocaine proceeds generated every month is between $7,560,000 - $8,640,000 per year; and between $37,200,000 - $43,200,000 over five years.

12. CS #1 stated that she/he regularly communicated with Wilbert through cellular telephones to coordinate delivery of narcotics over the past five years (approximately 2017 to 2022). Wilbert would contact CS #1 to coordinate the "drop" of cocaine and marijuana.[1] Shipments of cocaine and marijuana were delivered to locations in Milwaukee, Wisconsin monthly and, on several occasions, biweekly, for over five years. Throughout the duration of the shipment, CS #1, Wilbert, and Long would maintain contact to ensure delivery of the narcotics.

13. On September 7, 2022, HSI and DEA Group 68 conducted a forensic analysis of the cellular telephone that was seized from the search warrant conducted in Milwaukee, Wisconsin as detailed in paragraph 7. A review of the SMS text messages revealed conversations between CS #1 and Long. The text thread covered a period of four months and detailed conversations between CS #1 and Long discussing the transportation and sale of narcotics. Long frequently sent text messages highlighting when shipments of cocaine and marijuana, transported by Wilbert, were to be sent to CS #1. Long would also notify CS #1 when packages of the drug proceeds were to be sent back to Los Angeles, California. The text messages indicate that Long procured and directed the shipments of cocaine.

14. CS #1 stated the currency-based proceeds from his/her cocaine sales were collected by CS #1 and shipped to John Marin via FedEx, from FedEx locations in the greater Milwaukee area. Long had instructed CS #1 on how to arrange the currency and an invoice for jewelry in a FedEx package. Long then periodically emailed FedEx shipping labels and

---

[1] According to CS #1, Long also conspired with another subject who is a Los Angeles area associate of John Marin, to acquire marijuana from Ferreira's DTO and transport it to Milwaukee for distribution by CS#1 and Perry.

fictitious invoices to CS#1. CS #1 showed case agents several of the emails sent from Long. Listed on the invoices were high-dollar jewelry items, for example Rolex watches. CS #1 stated that "jewelry" and jewelry-related terms are used as code words for the cocaine on the invoices to give the impression of a legitimate business transaction. CS #1 has acknowledged having mailed upwards of $275,000 at one time.

15. CS #1 received an invoice from Long approximately every week from Long's email address. The invoices primarily purported to be from JM Time Corp / R&J Watch Co, XXX S. Olive Street, #202, Los Angeles, California 90014. However, other invoices purported to be from other businesses, including Virgo Stones and Jewelry and International Players Club Inc. (also known as IPC Jewelry), among others. Open records check on the above listed businesses indicate that JM Time Corp is a registered limited liability corporation with the State of California associated with Marin. Virgo Stones Jewelry does not have an official registration with the State of California or any other official entity, however, FedEx shipping labels reveal it is associated with Graciela Gonzalez-Cruz. International Players Club, / IPC Jewelry Company may be the same company that applied for an official registration with the State of California more than 20 years ago, in the name of a different individual. However, it is now associated with Michael Aleman, an associate of both John Marin and others, through bank records.

16. On October 19, 2022, law enforcement obtained a search warrant to track the location of Wilbert's 2019 White Ford Transit Van, bearing Arizona license plate number Z6A6CAA  On November 21, 2022, at approximately 9:00 AM, the Waukesha County Drug Group stopped Wilbert's white Ford van on Interstate 43 near the city of Mukwonago, Wisconsin. Wilbert was the driver and sole occupant. This area is in the southeastern corner of Waukesha County, Wisconsin within the Eastern District of Wisconsin. A K9 alerted to the

presence of narcotics in the vehicle and the vehicle was later searched. The search yielded 3.7 kilograms of cocaine/fentanyl mix, 23.22 kilograms of marijuana, and 889 grams of psilocybin. All items were seized, and Wilbert was taken into custody.

17. On November 21, 2022, after being advised of and waiving his rights, Wilbert made a statement during which he admitted that he drove to Los Angeles on November 18, 2022, where he contacted a man named "Red," who owns jewelry stores in the area. Wilbert identified John Marin by photograph and as the same individual he knows as "Red." Wilbert stated that he picked up cocaine at a jewelry store at XXX S. Olive Street, Suite 202. Wilbert stated that the jewelry store at XXX S. Olive Street, Suite 202, is owned by Marin and is called JM Time Corp. Wilbert stated that he transports cocaine for Marin and has been doing so for the past three years. Wilbert stated he contacts Marin by using WhatsApp and showed case agents a text thread in WhatsApp between Wilbert and Marin. Case agents viewed the text thread in which Marin gave Wilbert instructions on when and how to pick-up cocaine at JM Time Corp. Wilbert stated when he stopped in front of JM Time Corp., Marin's assistant walked out of the jewelry store carrying a medium-sized black tote with a yellow lid. Wilbert said the assistant put the tote in Wilbert's van and walked back to the jewelry store. Wilbert said every time he has picked up narcotics from Marin, the assistant always brought out the narcotics and the narcotics were always in the exact same type of tote. Notably, the cocaine/fentanyl located in Wilbert's van on November 21, 2022, was stored inside a medium-sized black tote with a yellow lid.

18. Wilbert stated after he received the cocaine from Marin during the November 2022 trip, Wilbert drove south to Gardena, California. Wilbert said he stopped at a warehouse at the address of XXXX W. El Segundo Blvd, Gardena, California. He stated the address was where an unknown man named "C", told him to go to pick up a load of marijuana. Wilbert

stated he was there for about an hour while a group of men canned and loaded marijuana in his van. The marijuana located in Wilbert's van on November 21, 2022 was stored in large aluminum cans that were sealed. Wilbert stated that after the marijuana was loaded into his van, he left the area and began driving toward Wisconsin.

19. Wilbert claimed he was going to drive to Milwaukee, Wisconsin to meet "BJ" to deliver the narcotics load. Wilbert was shown a photograph of Bobby Perry, a subject identified though this investigation as being one of the Milwaukee area distributors for this DTO. Wilbert identified the photograph of Bobby Perry as "BJ." Wilbert stated that he was going to deliver the narcotics to Perry's residence located at XXXX W. Good Hope Road, Milwaukee, Wisconsin. Wisconsin utility records listed Perry as the owner of XXXX W. Good Hope Road. Wilbert stated that for years, he has delivered narcotics to Perry and to Perry's residence. Wilbert said that Perry, Long, CS #1, and Wilbert would coordinate cocaine shipments multiple times per month and have done so for over three years. Wilbert stated that Long is the broker for all of the narcotics shipments for the past four to five years. Wilbert stated Long is in contact with Marin and "C." Wilbert stated Long will contact Marin and "C" to negotiate narcotics shipments to Milwaukee, Wisconsin. After Long has contacted Marin and "C," Long will contact Wilbert to determine which shipments Wilbert will transport. Wilbert stated that he generally gets paid $4,000 to transport the shipments and is paid in California before he begins the trip. Wilbert stated that, in the past, he has transported narcotics provided by Marin to other locations across the United States at Long's direction. Wilbert also gave the phone numbers for Marin and Long. The phone numbers provided have been identified as Marin and Long's phone numbers based on investigative findings and tolls analysis conducted by case agents.

20. On January 26, 2023, HSI Milwaukee and HSI Casa Grande executed a federal search warrant at XXXX S. Beckett Street, Gilbert, Arizona, which is associated with Antonio Long. HSI seized seven cellular telephones and two iPads from the residence and conducted a forensic examination of the devices. Case agents reviewed each forensic examination conducted to preserve any evidence. Notably, within the black iPad and two LG phones, case agents discovered preprinted shipping labels and invoices saved within the devices in the form of images and documents. These images were created and delivered via email and saved to Long's devices before being emailed, using two Gmail addresses, to the distributors in the Milwaukee area.

21. The preprinted FedEx shipping labels are the same type of labels encountered previously in the investigation. Both the shipper and receiver listed on most of the labels are Marin and/or R&J, with fewer FedEx labels listing both the shipper and receiver as Graciela Gonzalez [Cruz] / Virgo Stones, Michael Aleman / International Players Club (IPC Jewelry) and others. The sending and receiving addresses are both located in the Los Angeles, California area.

22. The invoices located on the devices included some from JM Time Corp / R&J Watch Co, Virgo Stones and IPC Jewelry, along with a purported business called "Buck Eyes", and its Gmail address, which is one of the email addresses used to send the JM Time Corp / R&J Watch Co invoices and FedEx labels to CS#1.

23. Following the search of Long's residence in Arizona, Long was advised of and waived his rights. Long then made a statement against his penal interest. Long spoke to case agents about his cocaine and marijuana distribution activities. Long confirmed that he would order shipments of narcotics from Marin and have Wilbert transport the narcotics to locations in the greater Milwaukee, Wisconsin area. During the interview, Long stated that the proceeds of

the narcotics sales were packaged in FedEx Express packages and shipped to Marin and others in Los Angeles, California. Long also acknowledged that he would receive preprinted shipping labels and invoices from Marin and others and email them using his two Gmail accounts to narcotics distributors in Wisconsin. Long was asked why the proceeds did not go to him directly, and Long stated "everyone sent all the money to John (Marin) because he (Marin) has a system; the coke and the weed money went to him (Marin)." Long also stated, "John (Marin) has a system."

24. CS #1 was subsequently questioned by case agents about the invoices and shipping labels found on Long's electronic devices. CS #1 explained that the invoices for "Buck Eyes" are from Long. CS #1 explained to agents that s/he would receive those invoices from Long for marijuana orders/purchases. S/he stated that "Buck Eyes" is Long's marijuana venture. CS #1 said that s/he received invoices since the beginning when s/he was selling narcotics for the DTO. CS #1 explained that at the start of the DTO, Long was selling marijuana. S/he said that Long contacted suppliers in California and the suppliers would front the marijuana to Long. Long took orders from dealers in various locations within the US and coordinated the shipment of the marijuana to the dealers, via mail or vehicle. CS #1 stated that first s/he received marijuana in the mail, but after the DTO got more business and orders became larger, Long employed Brian Wilbert to transport the narcotics. CS #1 also stated that Long used "Buck Eyes" invoices in order to differentiate between marijuana and cocaine proceeds.

25. CS #1 explained that after she/he received the narcotics, Long emailed an invoice from both of the Gmail accounts with a shipping label. CS #1 said the invoices would indicate how much money was to be sent via FedEx back to California. CS #1 stated that all the proceeds were mailed via FedEx and the proceeds were always sent to locations in the greater Los

Angeles, California area. CS #1 stated that the recipient was typically John Marin but that other recipients were sometimes used. CS #1 stated that s/he mailed several hundred thousand dollars per month in proceeds based on the invoices.

26. CS #1 stated that when bulk cash was shipped via FedEx, the money was packaged in three layers. The first layer had the bulk cash in a smaller box/envelope, the second layer contained the packaged cash box/envelope placed into a medium box with an invoice, the third layer contained all previous contents placed in a larger box that was sealed. The exterior of the third box would have the preprinted shipping label affixed to it and would be shipped FedEx Express.

27. The proceeds from narcotics sales are collected by CS #1 and mailed via FedEx. Listed on the shipping contents of the packages are high-dollar jewelry items, for example Rolex watches. CS #1 has acknowledged to have mailed upwards of $275,000 at one time. LONG emails CS #1 invoices stating how much payment are due for the cocaine. The invoices have jewelry listed as the purchase item along with the fee listed for them. The affiant viewed the emails provided by CS #1; LONG is listed as the sender along with his Gmail address. CS #1 was receiving an invoice from LONG approximately every week from LONG's email address. The invoices have the following businesses listed: JM Time Corp., Virgo Stones Jewelry Company, Ortho Lab, International Players Club Inc. (also IPC Jewelry), SB Stainless Settings, and Prestige Fine Metals. CS #1 detailed how jewelry is being used as code for the cocaine on the invoices to give the impression of a legitimate business transaction. After receiving the invoice, CS #1 will package currency in FedEx boxes with a preprinted shipping label. CS #1 was being emailed preprinted shipping labels from LONG. From the present back to most of 2021, the recipient listed on the preprinted shipping labels was listed as John MARIN. Through

database and record checks, MARIN is listed as the owner of JM Time Corp., Virgo Stones and Jewelry Company, and Ortho Lab. The FedEx packages are taken by CS #1 to FedEx mailing facilities in the greater Milwaukee area and mailed priority overnight to locations in California, primarily the Los Angeles area.

28. On September 29, 2022, the affiant applied for federal Search the Gmail contents of LONG's two Gmail email addresses. The contents of LONG's Gmail account revealed he had received invoices and shipping labels from accounts associated with MARIN and then LONG sent those invoices and labels to PERRY and CS #1. The affiant confirmed with CS #1 that all invoice emails were debts for cocaine that were delivered to him/her. To which, CS #1 packaged and shipped large sums of currency to them via FedEx with the provided shipping labels CS #1 was emailed.

29. On November 20, 2024, case agents executed federal search warrants in California at XXX Olive Street (Marin's jewelry business) and Marin's residence and at The apartment at XXXXX Crenshaw Boulevard #XXX, Hawthorne, California. During the search of Marin's residence, Marin acknowledged that he knew why case agents were at his home and mentioned "it was something from a few years ago" while sitting in his living room.

30. At the search warrant of XXX S. Olive Street, Suite 202, Los Angeles, California, case agents located and seized a bag containing a large quantity of a white brick-like substance that later presumptively tested positive for cocaine. A firearm was also found at that location along with various pieces of high value jewelry. Raphael Ponce was encountered at the jewelry store. Ponce is John Marin's assistant. A *Mirandized* interview of Ponce was conducted by case agents. Ponce waived his right to counsel and willfully gave a statement to case agents. Ponce also gave consent to case agents to view his cellphone. Ponce claims to have delivered

numerous boxes, packages, and other items on behalf of Marin. Ponce was shown pictures of Long and Aleman. Ponce recalls seeing both subjects at the jewelry store in the past and has claimed to have delivered boxes to both Long and Aleman. Ponce claims to be unaware that he was delivering cocaine, but he also stated that he has seen Marin and another in possession of narcotics in the jewelry store.

31. Based on the above information and facts, your Affiant submits there is probable cause to believe that John MARIN, in the Eastern District of Wisconsin, conspired with others, known and unknown, to distribute a controlled substance, in violation of Title 21, United States Code, Sections 846 and 841(a)(1) (conspiracy to distribute cocaine and distribution of cocaine) and conspired with others, known and unknown, to commit money laundering, in violation of Title 18, United States Code, Section 1956(h) (conspiracy to commit money laundering).